UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RITA K. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:15-CV-108-TAV-HBG |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 12 & 12-1] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 14]. Rita K. Smith ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On May 6, 2011, the Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began February 15, 2010. [Tr. 135]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 60-61]. On April 25, 2013, a hearing was held before an ALJ to review determination of the Plaintiff's claim. [Tr. 28-46]. On July 30, 2013, the ALJ found that the Plaintiff was not disabled. [Tr. 15-27]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-5]; thus, the decision of the ALJ became the final

1

decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 12, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since February 15, 2010, the alleged onset date (20 CFR 404.1572 *et seq*., and 416971 *et seq*.).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, impingement syndrome of the left shoulder, [and] arthritis of the knees (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can perform no more than occasional reaching overhead with her left arm.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on October 25, 1959 and was 50 years old, which is defined as an individual closely approaching

2

advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17-23].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

3

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1505(a), 4015.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of

4

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.

5

1986)).  Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility."  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits."  Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.    POSITIONS OF THE PARTIES**

On appeal, the Plaintiff alleges two assignments of error committed by the ALJ.  First, the Plaintiff contends that the ALJ erred in her application of the treating physician rule. [Tr. 12-1 at 7].  Specifically, the Plaintiff argues that the ALJ failed to assign a specific weight to the opinion of treating physician Stephen Pershing, M.D., failed to give "good reason" for declining to give the opinion great weight, and failed to appropriately weigh the factors set forth in 20 CFR §§ 404.1527(c) and 416.927(c) for determining the degree of weight the opinion was due.  [Id. at 7-14].  Second, the Plaintiff maintains that the ALJ's assignment of "great weight" to nonexamining state agent K. Steinhardt was error because the state agent was not an "acceptable medial source."  [Id. at 14-15].

The Commissioner responds that while the ALJ was not explicit in the weight assigned to

Dr. Pershing's opinion, the ALJ's residual functional capacity ("RFC") determination makes clear that no weight was assigned to the opinion. [Doc. 14 at 13]. Moreover, the Commissioner asserts that the ALJ gave good reason for declining to endorse the opinion, namely, that the opinion was inconsistent with the Plaintiff's activities, diagnostic imagining results, examination findings, and treatment records. [Id. at 14-15]. This same evidence, in addition to the lack of credibility corroborating the Plaintiff's allegations, provided substantial evidence for the overall RFC determination reached by the ALJ. [Id. 10-14, 16-18]. Lastly, the Commissioner argues that the record indicates that nonexamining state agent Steinhardt is a medical doctor, and therefore, an "acceptable medical source" the ALJ properly relied upon in assessing the Plaintiff's functional limitations. [Id. at 15-16].

The Plaintiff filed a reply, arguing that rather than addressing the ALJ's failure to apply the 20 C.F.R. §§ 404.1527(c) and 416.927(c) factors for determining what weight Dr. Pershing's opinion was due, the Commissioner's brief focused on the Plaintiff's credibility, an issue that does not absolve the ALJ's erroneous application of the treating physician rule. [Doc. 15 at 2]. Further, the Plaintiff submits that the Commissioner's explanation in regard to the lack of specific weight assigned to Dr. Pershing's opinion amounts to *post-hoc* rationalization, which this Court is prohibited from considering. [Id. at 3]. Finally, the Plaintiff asserts that nonexamining state agent Steinhardt is, at best, an "other source" because she never signed her name on the assessment form and her credentials do not appear anywhere on the form. [Id. at 5]. The Plaintiff does not seek to strike the opinion from the record, but argues that the opinion is not entitled to controlling weight because it was rendered by an "other source." [Id.].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Treating Physician Stephen Pershing, M.D.

Dr. Pershing treated the Plaintiff regularly from June 7, 2011 through March 20, 2013. [Tr. 204-07, 255-58, 281, 308-96]. The Plaintiff was treated for degenerative disk disease of the lumbar spine and degenerative joint disease of the knees. [Tr. 207]. The Plaintiff complained of chronic back and bilateral knee pain that had become severe over the past several years. [Id.]. Until she established treatment with Dr. Pershing, the Plaintiff had only received intermittent treatment from the emergency room due to a lack of health insurance. [Id.]. Because the Plaintiff was uninsured, Dr. Pershing noted that the Plaintiff could not afford an orthopedic evaluation, MRI studies, or surgery. [Tr. 357]. As a result, the Plaintiff was limited to pain management through medication and at home strength exercises. [Tr. 348, 348].

On February 26, 2013, Dr. Pershing rendered two opinions: (1) a "Medical Statement Regarding Knee Problem for Social Security Disability Claim" [Tr. 384-85], and (2) a "Medical Statement Regarding Shoulder Problem for Social Security Disability Claim" [Tr. 389-90]. In regard to the Plaintiff's knees, Dr. Pershing opined that the Plaintiff had left and right knee problems, chronic pain, stiffness, swelling and tenderness, limitation of motion, instability, and an inability to ambulate effectively, including an inability to walk a block at a reasonable pace on a rough or uneven surface, walk enough to shop or bank, or climb a few steps at a reasonable pace with the use of a single handrail. [Tr. 384]. Dr. Pershing concluded that the Plaintiff suffered from severe pain that limited her to only being able to work one hour per day, sit or stand for 15 minutes at one time, bend or balance very seldom, could never stoop or climb, and could never lift any amount of weight on either an occasional or frequent basis. [Tr. 385].

8

In regard to the Plaintiff's shoulders, Dr. Pershing opined that while the Plaintiff could only sit for 15 minutes at one time, she could sit for a total of 60 minutes in a workday, and could occasionally lift 5 pounds, use her left and right arm below shoulder level, and raise her right arm above shoulder level but never her left arm. [Tr. 389].

In the disability determination, the ALJ discussed a July 25, 2011 treatment note, in which Dr. Pershing "notice marked improvement in her overall sense of well being." [Tr. 21, 258]. The Plaintiff was noted as sleeping better, but that her left shoulder pain continued to disrupt her sleep. [Id.]. The Plaintiff reported that her pain was a 10 out of 10 in terms of severity, but received considerable neck and low back relief from her chiropractor. [Id.]. In addition, the Plaintiff complained of increase pain to her right knee, which was noted as a longstanding problem that has never been evaluated. [Id.]. The ALJ also observed that on February 15, 2013, Dr. Pershing prescribed the Plaintiff a cane. [Tr. 21, 281]. In addition, the ALJ discussed Dr. Pershing's decision to terminate his treating relationship with the Plaintiff on March 20, 2013, after learning of discrepancies involving the Plaintiff's narcotic pain medication. [Tr. 21, 309]. Specifically, Dr. Perishing learned that the Plaintiff had received controlled substances from other providers in violation on the Pain Management Agreement she had signed with Dr. Pershing. [Tr. 330]. Furthermore, there were discrepancies in what the Plaintiff told Dr. Pershing and her pharmacist, causing Plaintiff's pharmacists to refuse to honor an Oxycodone prescription Dr. Pershing had written. [Id.].

Finally, the ALJ addressed Dr. Pershing's findings regarding the Plaintiff's knees as opined in his medical statement. [Tr. 21]. The ALJ concluded that he "does not accord this opinion great weight. The claimant herself has reported that she can ambulate effectively, and independently shop and bank." [Id.].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007).

The first assignment of error the Plaintiff alleges in regard to the ALJ's application of the treating physician rule is that the ALJ failed to assign a specific weight to Dr. Pershing's opinion. Although it is clear from the ALJ's decision that Dr. Pershing's opinion was not accorded controlling weight, the Court finds that the ALJ failed to identify the level of deference the

10

opinion was accorded. Declining to give a treating physician's controlling weight does not mean that the opinion was rejected. See Blakley, 581 F.3d at 408 (holding that "[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected"). When a treating physician's opinion does not garner controlling weight, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007). Accordingly, our appellate court has held that an ALJ's failure to assign a specific weight "alone constitutes error." Cole v. Astrue, 661 F.3d 931, 938 (6th Cir. 2011). Nonetheless, an ALJ's error to assign a specific weight does not necessarily constitute a reversible one. In a recent case decided by the Sixth Circuit Court of Appeals, the ALJ's failure to articulate a specific weight to the claimant's treating physician was not found to be reversible error where the ALJ "made sufficiently clear his reasons for discounting the opinion." Kepke v. Comm'r of Soc. Sec., No. 15-1315, 2016 WL 124140, at *5 (6th Cir. Jan. 12, 2016).

In the present case, the Court agrees with the Commissioner that the ALJ's RFC determination makes clear that no weight was assigned to Dr. Pershing's opinion. This conclusion does not require any speculation on the Court's part, as suggested by the Plaintiff, because the ALJ's finding that the Plaintiff is capable of medium work is directly at odds with all of the limitations assessed by Dr. Pershing. However, the Court finds that the ALJ failed to provide good reason for rejecting Dr. Pershing's opinion, which brings the Court to the Plaintiff's second allegation of error.

First, the ALJ only addressed Dr. Pershing's medical statement relating to the Plaintiff's knees. Dr. Pershing, however, completed two medical statements, one pertaining to the Plaintiff's knees and one pertaining to the Plaintiff's shoulders. Even accepting the

11

Commissioner's position that no weight was given to either opinion, the ALJ's decision provides zero reason, much less good reason, for rejecting the medical statement regarding the Plaintiff's shoulders. The ALJ's failure to provide an explanation for the weight assigned to this opinion is significant. The purpose of the good reason rule is to allow claimants to "understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not." Rogers, 486 F.3d at 243 (6th Cir. 2007) (quoting Wilson, 378 F.3d at 544) (internal quotations omitted). Failure to adhere to this fundamental principle hinders a reviewing court from executing meaningful appellate review. Id.

Second, the ALJ did not provide good reason for rejecting Dr. Pershing's opinion regarding the Plaintiff's knees. The ALJ states that he does not accord the opinion great weight, because the Plaintiff "has reported she can ambulate effectively, and independently shop and bank." [Tr. 21]. The ALJ, however, does not cite where in the record the Plaintiff reported having no problems walking or doing certain activities such as shopping or banking. The Commissioner cites to the Plaintiff's Function Report, statements made during a consultative examination, and her testimony during the administrative hearing, none of which provide substantial evidence for the ALJ's conclusion. The Plaintiff indicated in her Function Report and during a July 6, 2011 consultative examination that she could handle her own finances and did her own grocery shopping about once a week. [Tr. 152, 170, 210-11]. The Plaintiff elaborated during her testimony before the ALJ that when she walks or does activities, such as grocery shop, her pain increases. [Tr. 34]. She explained that she could probably walk for 10-15 minutes before having a problem. [Id.]. Furthermore, Dr. Pershing's treatment notes are replete with complaints of becoming increasingly unstable, falling intermittently, and being prescribed a

12

cane. [Tr. 281, 332, 337, 339, 346, 348]. Therefore, the ALJ's conclusion that the Plaintiff reported no difficulty walking and performing associated activities is a mischaracterization of the evidence.

Not only did the ALJ fail to provide good reason for declining to assign great weight to Dr. Pershing's opinions, he also neglected the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The ALJ's opinion is absent of consideration of the length of treatment, frequency of examination, the nature and extent of the treatment relationship, or the specialization of the source. See id. The ALJ only briefly addressed the supportability and consistency and only in regard to part of Dr. Pershing's opinion, *i.e.*, the medical statement pertaining to the Plaintiff's knees, juxtaposing one half of Dr. Pershing's overall opinion with the Plaintiff's alleged ability to ambulate effectively and perform activities without problems. The Court finds such blanket and brief consideration inadequate to satisfy 20 C.F.R. §§ 404.1527(c) and 416.927(c). When determining the level of deference due to a treating physician's opinion, the ALJ may not pick and choose the bits of evidence that contradict the opinion but must consider the record as a whole. See 20 C.F.R. §§ 404.1527(b), 416.927(b) (explaining that in considering medical opinions, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive"); Howard v. Barnhart, 376 F.3d 551, 554 (6th Cir. 2004) (finding error "where the administrative law judge was found to have selectively considered the evidence in denying benefits"). However, in this case, the Court finds that even the selective evidence the ALJ relied upon falls short of supporting his findings.

The Commissioner spends much of her brief arguing that substantial evidence supports the ALJ's credibility finding, focusing on the Plaintiff's reported activities, her failure to seek

13

Case 3:15-cv-00108-TAV-HBG   Document 16   Filed 02/02/16   Page 13 of 17   PageID #: 500

treatment until 15 months after her alleged onset date,[1] and fraudulent statements she made in regard to receiving welfare benefits, as well as obtaining pain medication from additional sources outside of Dr. Pershing. [Doc. 14 at 10-14]. While the Commissioner's arguments may very well support an adverse credibility finding against the Plaintiff and provide substantial evidence in support of the ALJ's ultimate conclusion, "substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527[(c)](2) as harmless error." Blakley, 581 F.3d at 410. As explained by our appellate court,

> to recognize substantial evidence as a defense to non-compliance with § 1527[(c)](2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to "set aside agency action . . . found to be . . . without observance of procedure required by law."

Wilson, 378 F.3d at 546 (quoting 5 U.S.C. § 706(2)(D) (2001)).

Of course, "[t]hat is not to say that a violation of the procedural requirement of § 1527[(c)](2) could never constitute harmless error." Id. at 547. A violation of the good reason rule can be deemed "harmless error" if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possible credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not

---

[1] In the same vein, the Commission also argues that the Plaintiff's minimal and conservative treatment supports the ALJ's RFC determination. [Doc. 14 at 11, 17]. The Court notes, without making any particular finding on the Commissioner's position, that the Plaintiff's testimony as well as treatment notes explain that the Plaintiff had no health insurance and had to pay all medical costs out-of-pocket which is why she was unable to obtain MRI imaging, orthopedic evaluations, or surgical intervention to treat her impairments. [Tr. 40-41, 348, 357]. Social Security Ruling 96-7p cautions adjudicators to be mindful of the reasons a claimant may have for the lack of consistent or frequent medical treatment, including an inability to afford treatment or the lack of access to free or low-cost medical services. 1996 WL 374186, at *7-8 (July 2, 1996). Therefore, while conservative and minimal treatment may be appropriate considerations for discounting a claimant's subjective complaints, it will not always create an adverse inference where a claimant is incapable of affording appropriate medical care.

14

complied with the terms of the regulation.

Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted).

The Court does not find that any of those exceptions apply here. Upon review of the record, the Court does not find Dr. Pershing's opinions to be patently deficient, nor does the Court find that the ALJ adopted the opinions. Finally, because the ALJ's decision does not sufficiently explain the reasons for his conclusion, the Commissioner cannot show that the ALJ has otherwise met the regulation's goal.

Accordingly, the Court finds the Plaintiff's allegation of error is well-taken. The Court will recommend that the case be remanded to the ALJ for reconsideration of Dr. Pershing's opinions.

### B.     Nonexamining State Agent K. Steinhardt

Next, the Plaintiff contends that the ALJ erred in affording controlling weight to nonexamining state agent K. Steinhardt. [Doc. 12-1 at 14]. The Plaintiff submits that Steinhardt, who completed a form entitled "Physical Residual Functional Capacity Assessment" on November 18, 2011 [Tr. 261-268], failed to indicate her credentials as a medical professional on the assessment form, and that the Tennessee Licensure Verification list does not indicate whether Steinhardt holds a doctorate degree. [Doc. 12-1 at 14]. Plaintiff's counsel brought this fact to the ALJ's attention during the administrative hearing, objecting to the exhibit on the grounds that the qualifications of Steinhart are not notated on the assessment form. [Tr. 30-31]. The Plaintiff does not seek to have the exhibit stricken from the record, however. [Doc. 15 at 5]. Instead, the Plaintiff contends Steinhardt's lack of unidentifiable credentials makes her an "other source" rather than an "acceptable medical source" pursuant to 20 C.F.R. §§ 404.1513 and 416.1513.

15

[Doc. 12-1 at 14].

The Commissioner argues that Steinhardt is an "acceptable medical source" because her signature appears elsewhere in the record, notably a form entitled "Disability Determination and Transmittal" pertaining to reconsideration of the Plaintiff's application for benefits, which is signed by "Kasiel Steinhardt M.D." [Doc. 14 at 15 (citing Tr. 45-46)]. The Commissioner also points out that Steinhardt's signature on the Physical Residual Functional Capacity Assessment form indicates that she is a medical consultant. [Id. (citing Tr. 268)]. Therefore, the Commissioner contends that the ALJ did not err in the level of deference assigned to Steinhardt. [Id.].

The Court observes that while the signature block on the Physical Residual Functional Capacity Assessment form does not indicate whether Steinhardt is a physician, the form does indicate that she is a medical consultant. [Tr. 268]. However, qualifications for medical consultants include "acceptable medical sources" as well as non-physicians who are limited to evaluating impairments for which they are qualified. Program Operations Manual System § DI. 24501.001, https://secure.ssa.gov/poms.nsf/lnx/0424501001 (last visited Jan. 25, 2016). While the Plaintiff argues that "nothing in the record supports the Disability Determination [and] Transmittal's classification of K. Steinhardt as possessing a doctorate degree," [Doc. 15 at 5], the Court is not persuaded. The suffix "M.D." following Steinhardt's name in the signature block on the Disability Determination and Transmittal form [Tr. 45-46] is sufficient evidence indicating that she is a medical doctor. Although it would have been prudent for Steinhardt to include her credentials on the Physical Residual Functional Capacity Assessment form as well, her signature on other forms which have been made part of the record adequately demonstrate that she was a physician. Therefore, the Court finds that the ALJ did not err is treating the opinion as one

16

rendered by an "acceptable medical source."

However, because the Court recommends remanding this case to the ALJ for reconsideration of Dr. Pershing's opinions, the weight assigned to Steinhardt will necessarily have to be reconsidered in light of the degree of deference the ALJ chooses to afford to Dr. Pershing.

## VI.  CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that the Plaintiff's Motion for Summary Judgment [**Doc. 12**] be **GRANTED IN PART AND DENIED IN PART** and the Commissioner's Motion for Summary Judgment [**Doc. 13**] be **GRANTED IN PART AND DENIED IN PART.**  Upon remand, the Court RECOMMENDS that the ALJ reconsider Dr. Pershing's opinions by assigning them a specific weight, and if the ALJ declines to give the opinions controlling weight, the ALJ is to provide good reason by weighing the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) for determining the amount of weight the opinions are due.

                              Respectfully submitted,

                              */s/ Bruce Guyton*
                              United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).